UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.C. ASSOCIATES,<br><br>　　Plaintiff,<br><br>　　v.<br><br>FIDELITY & GUARANTY INSURANCE COMPANY,<br><br>　　Defendant. | Civil Action No. 01-2437 (RJL/JMF) |

## MEMORANDUM OPINION

This case is before me for resolution of discovery disputes. Although I had hoped, following the issuance of my March 31, 2003 Memorandum Opinion and Order, that the parties would be able to come to some resolution as to the outstanding issues, it appears as though they are at an impasse and the matter is therefore once again before me.

### The Nature of the Controversy

In the complaint, plaintiff claims that defendant breached the terms of the insurance policy at issue by refusing to provide coverage following plaintiff's use of a pesticide on a property plaintiff managed. Defendant, on the other hand, argues that it had no obligation to defend or indemnify plaintiff upon the theory that the pesticide plaintiff used was "a pollutant" and that the insurance policy was never meant to cover the use of pollutants. The policy's "absolute pollution exclusion" is thus at the heart of the matter.

### The Discovery Sought

Plaintiff seeks 1) discovery regarding "other claims and litigation related to the policy

language upon which the defendant relies for its denial of coverage," <u>Plaintiff's Memorandum Regarding Pending Discovery Issues</u> at 2, and 2) discovery regarding "seminars, presentations and conferences at which the interpretation of the pollution exclusion was discussed or reviewed." <u>Id.</u> at 6.

## The Closed Files Problem

The defendant's Claims Information Resource Manager has determined that there are 1,363,000 active and inactive claims files that might contain information pertaining to the interpretation of the pollution exclusion. Declaration of Barbara Hawkins, ¶ 4, Exhibit A, <u>Defendant's Position Statement Regarding Unresolved Discovery Issues</u> ("Defs. Position"). Defendant's counsel caused a search to be conducted of all the claims files from 1986 to the present. Ms. Hawkins explains that the claims made by the insureds, those captured in the files, are not indexed or organized based on a particular coverage issue (e.g. "pollution exclusion" or "failure to notify carrier timely") or the specific claim presented. <u>Id.</u> ¶ 5. According to defendant's counsel, the coding used describes "general category types" such as absestos or hazardous waste. Use of that code in an electronic search yielded 454 files (including the six at issue here) that are, in defendant's counsel's view, most likely to contain information pertaining the interpretation of the pollution exclusion. Nineteen of those filed involved claims made in Maryland, Virginia or the District of Columbia. The defendant proposes that it be permitted to fulfill its discovery obligations by providing those nineteen files subject to its claiming pertinent privileges as to documents that are in the files.

Plaintiff accepts the defendant's methodology but will not accept being given solely these nineteen files. It wants access to the 448, i.e., the 454, less the six pertaining to this case that it

already has. It proposes a process where the defendant reports to the court "the amount of time which the reviews took, any problems encountered during the reviews and any other issues related to the time it took to conduct the reviews." <u>Plaintiff's Memorandum Regarding Pending Discovery Issues</u> ("Plains. Position") at 8. As to the remaining 429 claims files, it then wants the defendant to indicate the year of the claim and the region in which the loss was sustained. Armed with that information, plaintiff foresees either demanding the production of all the remaining files or agreeing to their sampling by, for example, region and date of loss.

## A Possible Resolution

As Judge Leon has emphasized, the cost of discovery in this case has to be reasonably related to what is at stake. Here, the potential maximum recovery could be dwarfed by what it would cost to find potentially discoverable documents. Furthermore, as illustrated by the recent debate concerning the proposal to amend the Federal Rules of Civil Procedure to reflect the reality that most information in our society is now created and captured in electronic form reflects, the most expensive part of the process of reviewing electronic files is review of the files by counsel to ascertain whether they contain material that is privileged from disclosure.[1] If the defendant was to therefore make available to the plaintiff the 429 files, plaintiff could search for the pertinent documents within them. Obviously, defendant justifiably fears that the files contain privileged material and the disclosure of them to plaintiff might be deemed a waiver of the privilege or even bring in its wake potential disciplinary problems. The solution that has emerged within certain segments of the bar is the creative use of protective orders, whereby the

---

[1] <u>See</u> Report of the Civil Rules Advisory Committee at 15, available at www.uscourts.gov/rules/comment. <u>See</u> <u>also</u> Manual for Complex Litigation § 11.446 (4th ed. 2004).

parties agree that disclosure of the documents pursuant to the order is not and cannot be construed as a waiver of any privilege. Under this regimen, the defendant is relieved of any obligation to review the files prior to production and its doing so cannot be deemed a waiver of any privilege that could be claimed. Thus, the first question presented is whether the defendant will agree to this procedure.

If defendant is unwilling to surrender the 428 files under these conditions, and the files are in an electronic format, there may be a technical methodology available to search them to narrow the search to only the pertinent files. It may, for example, be possible to search for only those documents within the files in which the words "pollution" and "exclusion" or both of them appear. An electronic search may also look for documents in which the word "pollution" is within a certain number of words of the word "exclusion." Such a search properly done can take minutes and can permit the reasonable elimination of, for example, files that do not contain either word. One can hope that this will reduce, to a more manageable number, the number of files that would then require a review by lawyers. Finally, I note that even those documents that are not presently in a format that is searchable (e.g. TIFF), may be quickly converted.

Accordingly, I would ask the defendant to advise me within ten days as to the following:

1. Is the defendant willing to surrender the 428 files to the plaintiff pursuant to a protective order in which it would be agreed that the surrender of the files to plaintiff is not a waiver or either the attorney-client or work-product privileges?

2. Are there any other restrictions that exist pursuant to statute or the common law that would preclude the defendant's surrendering the 428 files to the plaintiff?

3. If the answer to question # 2 is yes, can a protective order be fashioned to alleviate

any concern pertaining to these restrictions?

4. Are the 428 files currently in an electronic format and presently capable of being searched electronically for the existence of certain words within them?

5. If the files are in another format, what is it and if that format does not permit the kind of search described in question # 4, can they be converted into a format that would permit such a search? Does the defendant know whether such a conversion can be done using the technology the defendant already has and, if not, can defendant estimate the cost of such conversion?

**Seminars**

I previously narrowed and then granted plaintiff's demand that defendant identify all publications, seminars, presentations, conferences and meetings at which the "interpretation of the pollution exclusion was discussed or reviewed." Order of March 31, 2003 at 1.

The defendant proposes that it send an e-mail to all the employees in its Environmental Claims Unit directing that any employee who has spoken about the pollution exclusion at a seminar or conference identify herself and any written documentation she may have reflecting what she said. Defs. Position at 11. Plaintiff counters that the e-mail should be sent to what it understands to be the defendant's seven environmental and toxic tort claims units and to request that those who receive the e-mail indicate whether they either spoke at or attended seminars and conferences at which the pollution exclusion was discussed. Plains. Position at 12.

But, as the defendant correctly points out, the discussion of a pollution exclusion in an insurance contract by a person not then-employed by the defendant cannot possibly qualify as an admission by the defendant and is therefore irrelevant. I will therefore amend my order of March

31, 2003 as it pertains to Interrogatory No. 16 and require the defendant to identify all the seminars, conferences and presentations "at which the interpretation of the pollution exclusion was discussed or reviewed" *by a person then-employed by the defendant* (new matter in italics).

As to determining to whom the email should be sent, defendant refers to a single Environmental Claims Unit while plaintiff, in a footnote, indicates its counsel's understanding that the defendant has seven environmental and toxic tort claims units. Plains. Position at 12 n.10.

I cannot resolve, on this record, how many such units defendant has. Moreover, the distribution of a request to a larger number of people by e-mail is not particularly burdensome if, as it true of so many organizations, it has e-mail lists or list serves designed to broadcast information on an organization-wide basis. I will therefore speak generically and require the defendant to send the e-mail to all persons presently employed by the defendant who are reasonably likely to have attended a seminar, conference, or presentation, within the past five years, in which the pollution exclusion was discussed by a person then-employed by the defendant. I would expect the defendant to send such an e-mail to all persons who work in a unit where it is reasonably likely that they would have been responsible for a claim in which the coverage of the pollution exclusion was at issue or, by virtue of the nature of their work or responsibilities, would have attended such a seminar, conference or presentation.

Counsel for the defendant will file, within five days of sending the e-mail, a praecipe indicating when the e-mail and how it determined who should receive it. Counsel will then report the results to opposing counsel within ten days of sending the e-mail. Counsel for the defendant should emphasize in the e-mail the need for a prompt response in order to comply with

a court order. Plains. Position at 12.

       An Order accompanies this Memorandum Opinion.

_____<br>
JOHN M. FACCIOLA<br>
UNITED STATES MAGISTRATE JUDGE

Dated: